in this matter. I intend, with leave of the Court, to reserve a minute of my time for rebuttal. Right. You have to help keep track of your own time. That shows the total time. Yes, Your Honor. This case, it's difficult to fault the government for lacking energy in the acquisition of search warrants since they acquired not one but three warrants. So the issue in this case is more about the timing of the acquisition of the warrant as opposed to the timing of the actual Fourth Amendment seizure. But this case is really about more than that. What this case presents is a vehicle for exploring an issue that the law is going to have to explore, at least in my estimation, in more depth. And that is, what are the implications of a search of a computer? And it's not a trivial question. It's an important policy question because computers are increasingly becoming a unique facet of the human experience. As computers can store more and more data, it becomes more of a historian and a source of information about all aspects of a person's life, financial, personal, political, literary. It has a unique capacity, computers, due to storage aspects of the individual. You can look at it that way and you can say, well, it's just a giant file cabinet. It really, and the analogy is somewhat apt, Your Honor, but it really is more than that. One of the reasons for that is because of the fact that the computer is your gateway to the Internet. The Internet becomes, and especially the history, which the computer can resurrect and basically look at every website you've ever been to on the Internet, it becomes a really good indicator of what this person is interested in. What are their types of, virtually every aspect of what that person likes, from plants to children to politics. In the old days, when we used to communicate by mail, the same thing was true. You left a copy in your file and then there would be a search warrant and you'd find the copies. In principle, what's the difference between the old-fashioned way where there are copies in the file and the new modern technology where copies are in the file? The difference, Your Honor, is twofold. The first is in just the wealth of information. A computer can store far more than a file cabinet. That may be true. It can store far more than five, six, seven, eight file cabinets. But what's the difference in principle between a copy you leave in your file cabinet and you may have a warehouse of file cabinets? So that it stores more doesn't answer the question. Because you could do exactly the same thing by snail mail and keep copies. So my question I'm dealing with here is what's the difference in principle? The difference, Your Honor, is the difference between a glimpse into someone's life versus a panoramic view. And the other difference of a computer as opposed to a file cabinet is if you had an individual who had the equivalent of gigabytes of data in file cabinets, rooms full of file cabinets, law enforcement could painstakingly go through each file cabinet and read every letter, every set document that's in those file cabinets. It would take months, if not years. With a computer, and as we saw in this case, we had expert testimony about this, or at least testimony from the agent who looked at the computer, who actually is an agent, the technician. I'm having difficulty with that. He can put all the data, Your Honor. I'm having difficulty with that because a person could write to a purveyor of sexually explicit material, keep a copy in their file. They could organize their file so people could get into it easily without it being, without it being a difficulty. So I understand the technical difference, which you've explained to us. I don't understand the difference in principle for the application of a search warrant. And my endeavor here is to try to convince the Court that there is a difference, that the analogy that the case law makes right now to a closed container, to a file cabinet, is not an apt analogy. It's something that the courts are going to have to abandon because computers are simply different. Well, let me, let's try it this way. Is your argument that computers are different because it's, because in the case of the person who writes for pornography, it's probably unlikely that they would keep a copy of the letter in the file or once they got, were finished with the pornography, they would throw it away and throw away the letter? Whereas, are you suggesting with the, in this case we have the problem of the, you can't throw it away? It's an excellent point, Your Honor, and I'm glad you brought that up. It is true that with another... Oh, is that your point or is that my point? It's your point, but I embrace it. But the, a file cabinet, if you have something in your file cabinet you do not like, you can shred it, you can burn it, you can throw it away. But unless you are a computer technician and you know exactly what you're doing, you can never throw away anything that's on your computer. It becomes, the government can resurrect all your files, all your Internet history, everything you've ever used on that computer can be resurrected and displayed before the government's eyes. And not just they have the capability to do it, they can do it in a fast, efficient, fast, fast way. So what do we do about that? The answer can't be that you can't search a computer. It definitely cannot because computers are often used to... They're a file cabinet. Certainly. And that is the conflict that we have. That is what the law has to grapple with. How do we take the First Amendment privileges that are embedded in computers, the unique technology that's embedded in computers... You've posed the problem to us. What's your answer? What should the government have done in order to properly... You can't say they're not entitled to get to it because they are. What should they have done to get to it legally as you see the issue? What I would propose is that there needs to be a special prong of jurisprudence that applies to Fourth Amendment searches of computers that makes the government have to go through more exactitude than they do currently. And a better answer to that question is that they should have limited the parameters of their search after they had the second search warrant. Remember, there were three. The second search warrant is the one that let them get into the computer and start looking at the computer, the mirror image that they had. That they should have better procedures for limiting the search to what they're looking for. You're saying better procedures, but you're not telling me what you're proposing. Right. I think it would take... It's a bigger question than perhaps that I'm equipped to answer. It would take experts. It would take a gradual evolution of the law to get to the point where we need to be, at least in my estimation. What do you want us to write in this case? That the government should have taken further precautions to protect the First and Fourth Amendment interests that Giberson had in the computer, especially at the second stage. What precautions? We have to write something on a piece of paper when we get through this case. What precautions should the government have taken that we can now say the search warrant was invalid? Well, what the government did, and I'm trying to answer the question, but we need a little background. What the government did is had this program called iLook, which dumps all the files into a format where they can view all the files at once, and they just scroll through all the files, 20 to a screen. They should have had a better sorting mechanism that they... Better what? How better? Software that does a better job of separating documents into what they're looking for as opposed to just a general view of all the documents. Because what the evidence in this case shows is what the agent did for his convenience was look at every single type of document, or image document, a JPEG in this case, every single one because it was the easiest thing for him to do. But counsel, can't you take different types of files and rename them so that essentially you're covering them as perhaps being documents when in fact they're JPEG documents or JPEG documents and cover them as being Word documents, for example? So if you're looking for certain documents in a computer, don't you really have to look through all of the files in that computer to see whether or not they've been changed? It's a difficult problem. And, Your Honor, there seems to be some truth to what you're saying. I have to concede. In reading what the expert had to say in reading this record, there was some evidence that some of the files had an innocuous name which actually contained either child pornography or evidence of identity theft, which is what they were looking for at that point. So it does become where do we draw the line? So getting back to the questions that have been asked of you previously, how do we do this practically? How does law enforcement limit their search so that they're only looking for the particular documents that they've been authorized to search for? They need to either use software and, to be honest, I don't know exactly the name or terminology of the software, software that does a better job of sorting than what we saw in this case, which was no sorting at all. And the second thing is maybe they should have just waited. If they had just waited, in this case, after they noticed that some of the documents they were looking at got into criminal activity that they weren't supposed to be searching for the time between the second and third warrant, if they had stopped and got that third warrant before they kept looking, then that perhaps would have been enough to salvage the constitutionality of the search. And I see only 25 seconds left, so I'd like to... Yeah, you can have 30. Thank you. Thank you. Good morning. May it please the Court. Elizabeth Olsen on behalf of the United States. This investigation occurred in stages, and at every stage of this investigation, the agents and the officers involved acted cautiously, reasonably, and with careful regard for the defendant's Fourth Amendment rights. I think getting back to the facts of this case is important because, in particular, Mr. Carr was talking about the second search warrant, and that's the search warrant that authorized the computer specialist to look at the computer for information of Mr. Giberson's use of false identifications. In addition to information about his assets, they were at that point investigating him for failure to pay over $100,000 in child support. So they were looking for evidence of assets as well as his use of false identifications. And if you look at that second search warrant, it authorized the specialist to look for documents and pictures, specifically pictures, photographs that could be put on fake identification forms, because in the search of Mr. Giberson's home, they had found fake Nevada and I believe perhaps even New York identification documents, also the seal of the state of Nevada that had been put onto these fake identification forms. And so the search warrant authorized the computer specialist to look at graphics images. Now, the graphics images that he found, some child pornography, some state seals of the state of Nevada, photographs of people that could be put, had names like GA28.JPEG, right? So regardless of, I mean, I think Mr. Carr's suggestion is that there should have been some sort of interim filtering. But the question is what sort of interim filtering would have kept this computer specialist from looking at a document called GA58.JPEG, which had a photograph or a false identification card, and, you know, GA27.JPEG that had an image of child pornography. One of the suggestions that the defendant made in the district court was that instead of using this ILOOK program that allows the officer to take all of the JPEGs from everywhere on the computer, including deleted files, which, you know, just looking through the computer, he wouldn't have been able to see deleted files, but this program takes all the JPEGs and lets the agent specialist just sort of scroll down and take a quick look at basically thumbnails of these documents one at a time. In the district court, the defendant was saying that, in fact, what the specialist should have had to do was just look, you know, when you open a computer, you've got your different file folders. And he said, although the magistrate noted that this was, in fact, not in evidence, because there wasn't anything in the record, but he said that his, all of these fake identification photos were in a folder called IDs, and that if the specialist had just looked there, he would have found everything that he needed, and he wouldn't have had to look elsewhere on the computer. But one of the places where the child pornography was included in a folder called My Photos. So essentially what the defendant was saying is that in executing a search warrant that allows, that authorizes looking for photographs, looking for pictures, he shouldn't have been able to look in the folder called My Photos. And that just, I mean, that just simply doesn't make sense, both because he was specifically authorized to look at photos, and then also, as this court recognized in Hill, it is so easy to rename files, to rename, you know, you can rename an image file, you can call it, you can just change it to .doc, and then it looks like a document file. You can change something that says, you know, preteen Lolita to Sunday school lesson, which is what Judge Kaczynski said when he was sitting in the district court in Hill. And if law enforcement is going to be limited by how a defendant labels files, as this court said in Hill, that's like saying that when the officers are executing a search warrant for drugs and they find a bag of white powder, they can't seize it if it says flower on it. And that just, you know, you can't let law enforcement be hampered by the defendants. Okay. I understand. Can I ask you a question? Absolutely. It's about sentencing? Yes. I'm not quite sure I understand the theory of sentencing and why, and what happened when he was sentenced for both what, receipt and possession? Yes. And it was based on the fact that both, that the images were in the computer,  and so he... Possessed them, yes. Possessed them? Yes. He was indicted both for receipt and possession, was convicted for receipt and possession, and received concurrent sentences for both offenses. So the question, in terms of prejudice, what we're talking about here, I believe, is really the $100 special assessment, because both convictions were easy not to be assessed. Well, that could be, except that he's got on his record two convictions. Well, yes, that's true, too. And so how do you do that? It seems like it's the same thing. Actually, and two points. First of all, obviously we're operating under a plain error standard of review here, because this wasn't raised in the Supreme Court. And so the first question is whether there was error at all. And then secondly, whether that error is obvious. Now, this Court hasn't made a decision on that point, whether those two offenses merge at sentencing. The only circuit court decision that I've found that has specifically addressed the issue is the Seventh Circuit and Myers, and they found that those two offenses don't merge. And the reason for that is because under the Blackberger test, each offense has an element that the other doesn't have. So, for example, receipt requires knowing receipt. You have to specifically go out and knowingly seek to receive this child pornography. So if, for example, you're just looking for adult pornography and someone sends you child pornography and you weren't seeking it, you have not committed the offense of receipt of child pornography. But yet once you receive that, if you keep it, you have committed the offense of possession of child pornography. They have speech. If someone sends something to you and you receive it on your computer, why wouldn't that then be receipt? Because receipt has a center element and it requires knowing receipt. If you receive it without knowing that you're receiving it. I mean, if someone just sends you a file and says, check this out, and you open it up and it's child pornography, you have not committed the offense of receipt of child pornography. But if you retain it. So if you receive it and you didn't ask for it, you can't get hit for receipt. But if you decide to keep it, then you get hit for possession. Exactly. But you get hit for both receipt and possession, don't you? Because you just said that if you get it and you decide to throw it away, you haven't knowingly received it. So if you open it and keep it, you have knowingly received it and you have possessed it. No. Well, what the Seventh Circuit said in Myers, and I don't think this circuit has addressed this question, but if you receive it without, if you don't receive it knowingly, if you receive it without knowing that you're receiving it and then you open it up and here it is, and you keep it, you have, you are committing the offense of possession, but you haven't committed the offense of knowing receipt of child pornography. Now, the reverse is also true, that if you go out and seek, knowingly go out and seek. I don't understand that. The offense of receipt of child pornography requires, there's a center element. It is knowing receipt of child pornography. It is going out there. The only way with a computer you can know that, you can tell whether the person knowingly received it is if he doesn't throw it away. Well, not necessarily because you could, someone could be curious, could go out and seek child pornography knowingly seek out child pornography, get it, download it on their computer, open it up, just think, oh, my God, what have I done. Immediately dispose of it. And that would be, he would have committed the crime of receipt. Of knowing receipt, but not possession, because possession has, there's an affirmative defense to the offense of possession. So you could get like a spam, for example, a spam email, not knowing that attached to this email is some child pornography, for example. Exactly. And not have received it. Yes. On the other hand, if after you discovered that you had received this, sorry. Unwittingly received. Right. Right. And you kept it, now you would be guilty of possession. Yes. Right. But the only way you could knowingly receive it is if it were labeled. Well, if you say. Labeled business pornography. Or if you went out seeking it, or if you knowingly, if you went out looking for it and you got it and it was what you expected it to be. I think, if I could just go to my second point here. Because even if that doesn't make, I mean, even, you know, that's what the Seventh Circuit said. I mean, the Seventh Circuit has decided that these two offenses don't merge at sentencing. Even if this Court were not to go that way, if they, you know, when and if the case comes for the Court to decide that question in the first instance, we are under plain error review here. And so the question is whether, first of all, there was error. Second of all, whether that error was obvious. Now, in the absence of a Ninth Circuit case. You mean plain. Plain. Yes, plain in the sense of the second prong of plain errors. The error is plain in the sense of being obvious. Now, in the absence of a Ninth Circuit case, and where you've got the only circuit to have addressed this has come out the other way, we simply say that this Court can't say at this stage that that error, even if it's error, which we don't think it is, but even if it is, it's certainly not plain. I know your time is run, but there's a question I want to ask you. I had hoped we didn't have to get to this issue. And when I read in your brief at page three, you say on June 14, 2006, Giberson entered a conditional guilty plea to both counts of the indictment, reserving the right to appeal the district court's denial of his suppression motion. Our law in the Ninth Circuit is that if you reserve only the right to appeal the suppression motion, they can't get to the sentencing. So I thought we were home free, and I saw your citation to CR 66. I took the time to look to CR 66, and it says there is no plea agreement. Now, you wrote the brief. If you check 66, that statement shouldn't have been in the brief. Now, why is it in the brief? That's a very good question, Your Honor. It's a question that I shouldn't have to ask because it shouldn't have been there if that's a false citation. The defendant entered ñ I admit that I'm surprised at this. And if I could ask for your indulgence to look at this when I get back in the office and submit a letter. I've already looked at CR 66, and it's the minutes of proceedings, and it says there is no plea agreement. Period. That is, he pled guilty without a plea agreement. So I don't see how you can possibly from that determine that he has agreed that he was conditional plea agreement, he would only appeal his conviction but not his sentence. And your name's on the brief. Yes. No. I wrote the brief, and I'm responsible for what's in the brief. And if I made an error ñ Okay. You might go back and check that. I'm confident I'm right. And I don't doubt that you are, Your Honor. I will go back and try to figure out how, if I made this mistake, I made it. I mean, obviously, I did write the brief, and I'm responsible for the brief. So if I made a misstatement, all I can do is apologize to the court. Okay. Be more careful in the future. Thank you. I want to talk about merger briefly. And it's true this plea was entered without a written plea agreement, so there is no waiver of the right to appeal the sentencing issue. Secondly, I feel somewhat hurt that the government didn't read my brief. By the way, counsel, you read the red brief. You didn't find that. I found it. You did. You didn't find out in your reply brief that it's wrong and that you can appeal the sentencing issue. So you're taking credit for something now that you should have taken credit for if you'd found it first. But go ahead. You're right, Your Honor. But the government claims that there's no Ninth Circuit case on the point of merger. There's one directly on point from last year, the exact same statutes at issue, which the court, sua sponte and Kaczynski, found that they should merge. And so the government's contention up here that there's no Ninth Circuit authority on point is just flat wrong, and it's cited in the opening brief. The case is Kaczynski. It deals with the merger issue. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is United States v. New York.
judges: Wallace, Schroeder, Benitez